# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**JAMES WILLIAMS,**

       **Petitioner,**

       **v.**

**WARDEN, MADISON
CORRECTIONAL INSTITUTION,**

       **Respondent.**

                      **CASE NO. 2:16-CV-1050**
                      **JUDGE GEORGE C. SMITH**
                      **MAGISTRATE JUDGE KEMP**

## ORDER and
## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the *Petition*, Respondent's *Motion to Dismiss* (Doc. 11), Petitioner's *Reply* (Doc. 12), and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that Respondent's *Motion to Dismiss* (Doc. 11) be **GRANTED**, and that this action be **DISMISSED**.

Petitioner's *Motion(s) for Assistance to Attain Transcript of Proceedings* (Docs. 7, 9) are **DENIED**.

## I. Facts and Procedural History

The Ohio Fifth District Court of Appeals summarized the facts and procedural history of the case as follows:

> Bethany "Buffy" Bunting is an admitted drug dealer and Nick Brown was one of her frequent customers. At the time of these events, Brown lived with his girlfriend Samantha

Cook at 126 Pumphrey Terrace in Delaware, Ohio, and both were heavy users of heroin.

Brown bought heroin from, and frequently associated with, appellant James J. Williams, who is married to Amanda Williams ("Williams"). Other associates of the group are appellant's co-defendant Jake D. Lloyd and Lloyd's girlfriend Destaney Deweese.

On February 19, 2014, Brown, Cook, appellant, Williams, Lloyd, and Deweese were present at the Pumphrey Terrace address when Brown mentioned he knew Bunting. Appellant became "excited" because Bunting once stole from him and he now sought revenge. He asked Brown to help him "set up" Bunting by calling and asking her to come to the house. The group planned that appellant and Lloyd would wait outside and jump Bunting upon her arrival. After the robbery, Brown would come to the door as if he had no knowledge of what happened so Bunting would not realize he set her up. Brown agreed to the plan because he owed appellant money and wanted free drugs.

Brown duly called Bunting and asked her to bring him 20 oxycodone pills.

Williams and Deweese left the house with two young children in tow. Appellant waited in his green BMW in Brown's driveway and Lloyd hid around the corner of the house.

Bunting arrived in her gray Dodge Durango and noticed three cars in the driveway: a red Ford Focus she recognized as Brown's; a blue Honda Civic she recognized as Cook's; and a green BMW she was not familiar with. As she approached the house, she heard a car door close behind her and someone ran up and struck her in the head. Another man appeared and said "give me all your money ." Bunting said her attackers were one black male and one white male, both with their faces covered. The men ripped her shirt and clothing as the black male repeatedly hit her in the back of the head with a gun. Both men struck her and demanded her money, pills, and keys. The black male said "How does it

feel when someone takes something from you?" and Bunting said she didn't know what they were talking about.

As the beating took place, Brown and Cook hid in the garage. They heard appellant and Lloyd tell Bunting to shut up and heard Bunting ask who she ripped off. Eventually the men stopped beating her and grabbed approximately $90 and 19 pills. Bunting still had her car keys in her hand. She saw the men take off in the dark-colored BMW and she followed them a short distance in her Durango. When Brown and Cook heard the two vehicles leave, they ran to Brown's red Ford Focus and drove off. Bunting turned around to return to Brown's house and passed Brown and Cook.

Bunting next went to Kintz' Bar and told her mother about the assault. Bunting and her mother, along with several men armed with bats and pipes, returned to Brown's house. Bunting threw a metal sewer grate through the windshield of Cook's Honda Civic and threw a television through the glass doors of the house. The group did not make contact with Brown, Cook, or the assailants.

Meanwhile, Brown and Cook went to appellant's residence on Home Road in Powell, Ohio. Brown testified appellant was at the kitchen sink washing his hands and a gun covered in blood. Cook also testified to seeing the gun in the sink as well. The group divided the cash and pills taken from Bunting.

On March 9, 2014, appellant called Brown and Cook and ordered them to come to his house because he was afraid he was about to be raided by the police. Earlier, appellant had threatened a neighbor with a gun. The neighbor lived across the street from appellant, and when Brown and Cook arrived, police were present at the neighbor's house. Appellant gave Brown a bookbag containing ammunition and placed three firearms in Cook's purse.

Appellant and Williams left in one car followed by Brown and Cook in another vehicle. Both vehicles were immediately stopped by police and the firearms were found. All were arrested.

Brown and Cook agreed to testify against appellant and co-defendant Lloyd in exchange for plea deals resulting in treatment in lieu of conviction.

A search warrant was executed at appellant's residence after the arrest and law enforcement found a rifle and 1.9 grams of heroin. Appellant is prohibited from owning or possessing firearms.

Appellant and Lloyd were charged by indictment with one count of aggravated robbery with a firearm specification [Count I] and one count of felonious assault [Count II]; appellant was also charged with one count of aggravated menacing [Count III]; one count of tampering with evidence [Count IV]; one count of having weapons while under disability [Count V]; and one count of possession of heroin [Count VI]. Appellant entered pleas of not guilty and the case proceeded to trial by jury. Count VI, possession of heroin, was dismissed pursuant to Crim.R. 29(A). Appellant was otherwise found guilty as charged on July 17, 2014.

On July 23, 2014, appellant filed a Motion for New Trial asserting a juror failed to follow the instructions of the trial court. A juror purportedly told one of the prosecutors after trial "I don't think you did a very good job. I don't think you satisfied your burden." Appellee responded with a motion in opposition and an oral hearing took place on August 20, 2014. By entry dated August 22, 2014, the trial court overruled the motion for new trial. Appellant then moved for the trial judge to recuse himself because he was a witness to the alleged juror misconduct.

On August 25, 2014, the original trial judge voluntarily recused himself and vacated the judgment entry denying the motion for new trial. A visiting judge was appointed and the motion for new trial was again overruled by entry dated September 15, 2014. Appellant was sentenced to an aggregate prison term of ten years.

Appellant now appeals from the trial court's judgment entries of conviction, sentence, and denial of new trial.

Appellant raises two assignments of error:

ASSIGNMENTS OF ERROR

"I. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO GRANT APPELLANT'S MOTION FOR A NEW TRIAL BASED UPON THE CLEAR EVIDENCE OF A JUROR FAILING TO FOLLOW JURY INSTRUCTIONS GIVEN BY THE COURT."

"II. APPELLANT'S DUE PROCESS RIGHTS WERE VIOLATED WHEN THE COURT FAILED TO INFORM HIM OF THE DETAILS OF POST–RELEASE CONTROL AND THE CONSEQUENCES OF VIOLATING THE TERMS OF POST–RELEASE CONTROL AT THE TIME OF SENTENCING."

*State v. Williams*, 2015 WL 4757966, at *1-3 (Ohio App. 5th Dist. Aug. 10, 2015). On August 10, 2015, the appellate court overruled the first assignment of error and sustained the second assignment of error, affirming the judgment of the trial court, in part, overruling it, in part, and remanding the case to the trial court for re-sentencing for the limited purpose of proper imposition of post-release control. *Id.* On December 16, 2015, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *State v. Williams*, 144 Ohio St.3d 1429 (Ohio 2015).

In describing the proceedings after remand, the state court of appeals said:

The trial court held a resentencing hearing on December 21, 2015 for the purposes of imposing the correct term of post-release control. At the resentencing hearing, the trial court informed Williams that on Counts IV and V, he was subject to a period of post-release control "up to three years." (Tr. 31).

The trial court filed its Judgment Entry of Re–Sentencing on December 22, 2015. In the judgment entry, the trial court

stated, "[p]ost-release Control is an optional period of three years on Counts Four and Five."

Williams again appeals the trial court's failure to properly impose post-release control on Counts IV and V.

ASSIGNMENT OF ERROR

Williams raises one Assignment of Error:

"THE TRIAL COURT INCORRECTLY STATED THE TERMS OF DISCRETIONARY POST–RELEASE CONTROL ON WILLIAMS' THIRD–DEGREE FELONY CONVICTIONS, IN WILLIAM'S [SIC] RESENTENCING ENTRY."

*State v. Williams*, 2016 WL 6392880, at *1-2 (Ohio App. 5th Dist. Oct. 26, 2016). On October 26, 2016, the appellate court sustained Petitioner's assignment of error as to the trial court's incorrect notification of post-release control for Counts IV and V in the December 22, 2015, re-sentencing judgment entry, vacated that portion of the re-sentencing judgment entry relating to post-release control on Counts IV and V, and remanded the case to the trial court to correct the omission with a *nunc pro tunc* re-sentencing judgment entry. *Id.* at *3. Petitioner apparently did not file an appeal to the Ohio Supreme Court.

In the meantime, however, on November 9, 2015, Petitioner filed an application to reopen the appeal pursuant to Ohio Appellate Rule 26(B). (Doc. 11-1, PageID# 186.) On March 22, 2016, the appellate court denied the Rule 26(B) application. (PageID# 230.) On June 15, 2016, the Ohio Supreme Court declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4). (PageID# 258.)

On November 7, 2016, Petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He asserts that he was denied the effective assistance of trial counsel because his attorney failed to file a motion to suppress evidence based on an illegal traffic stop and improper arrest and failed to object to certain evidence. It is the position of the Respondent that Petitioner has procedurally defaulted these claims.

## II. Procedural Default

Congress has provided that state prisoners who are in custody in violation of the Constitution or laws or treaties of the United States may apply to the federal courts for a writ of habeas corpus. 28 U.S.C. § 2254(a). In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the state courts for consideration. 28 U.S.C. § 2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present his claims, then his petition is subject to dismissal for failure to exhaust state remedies. *Id*.; *Anderson v. Harless*, 459 U.S. 4, 6 (1982 (*per curiam* ) (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)). Where a petitioner has failed to exhaust his claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas...." *Coleman* v. *Thompson*, 501 U.S. 722, 735 n. 1 (1991).

The term "procedural default" has come to describe the situation where a person convicted of a crime in a state court fails (for whatever reason) to present a particular

claim to the highest court of the State so that the State has a fair chance to correct any errors made in the course of the trial or the appeal before a federal court intervenes in the state criminal process. This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)). One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted. That means that if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court do so. In the words used by the Supreme Court in *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case-that is, they are "procedurally defaulted."

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is waived by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id*. Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id*. Third, it must be decided whether the state procedural forfeiture is an adequate and

independent state ground upon which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the Court has determined that a state procedural rule was not complied with, and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error. *Id.* This "cause and prejudice" analysis applies to failures to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir.1985).

Turning to the fourth part of the *Maupin* analysis, in order to establish cause, petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Constitutionally ineffective counsel may constitute cause to excuse a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). In order to constitute cause, an ineffective assistance of counsel claim generally must " 'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.' " *Edwards*, 529 U.S. at 452 (quoting *Murray v. Carrier*, 477 U.S. 478, 479 (1986)). That is because, before counsel's ineffectiveness will constitute cause, "that ineffectiveness must itself amount to a violation of the Sixth Amendment, and therefore must be both exhausted and not procedurally defaulted." *Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005). Or, if procedurally defaulted, petitioner must be able to "satisfy the 'cause and prejudice' standard with respect to the ineffective-assistance claim itself." *Edwards v. Carpenter*, 529 U.S. 446, 450–51 (2000). The Supreme Court explained the importance of this requirement:

We recognized the inseparability of the exhaustion rule and the procedural-default doctrine in Coleman: "In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases." 501 U.S., at 732, 111 S.Ct. 2546, 115 L.Ed.2d 640. We again considered the interplay between exhaustion and procedural default last Term in *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999), concluding that the latter doctrine was necessary to " 'protect the integrity' of the federal exhaustion rule." *Id.*, at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (quoting id., at 853, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting)). The purposes of the exhaustion requirement, we said, would be utterly defeated if the prisoner were able to obtain federal habeas review simply by " 'letting the time run' " so that state remedies were no longer available. *Id.*, at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1. Those purposes would be no less frustrated were we to allow federal review to a prisoner who had presented his claim to the state court, but in such a manner that the state court could not, consistent with its own procedural rules, have entertained it. In such circumstances, though the prisoner would have "concededly exhausted his state remedies," it could hardly be said that, as comity and federalism require, the State had been given a "fair 'opportunity to pass upon [his claims].' " *Id.*, at 854, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting) (emphasis added) (quoting *Darr v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed. 761 (1950)).

*Edwards*, 529 U.S. at 452–53.

If, after considering all four factors of the *Maupin* test, the court concludes that a procedural default occurred, it must not consider the procedurally defaulted claim on the merits unless "review is needed to prevent a fundamental miscarriage of justice, such as when the petitioner submits new evidence showing that a constitutional

violation has probably resulted in a conviction of one who is actually innocent." *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013) (citing *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986)).

Petitioner asserts that he was denied the effective assistance of counsel because his attorney failed to file a motion to suppress or object to the admission of certain evidence. Petitioner should have raised these claims, which appear to be readily apparent from the face of the record, on direct appeal, where he was represented by new counsel. He did not. Further, he may now no longer do so by operation of Ohio's doctrine of *res judicata*. *See State v. Cole*, 2 Ohio St.3d (1982); *State v. Ishmail*, 67 Ohio St.2d 16 (1981); *State v. Perry*, 10 Ohio St.2d 175 (1967) (claims must be raised on direct appeal, if possible, or they will be barred by the doctrine of *res judicata*.). The state courts were never given an opportunity to enforce this procedural rule due to the nature of Petitioner's procedural default.

Moreover, Ohio's doctrine of *res judicata* is adequate and independent under the third part of the *Maupin* test. To be "independent," the procedural rule at issue, as well as the state court's reliance thereon, must rely in no part on federal law. *See Coleman v. Thompson*, 501 U.S. at 732–33. To be "adequate," the state procedural rule must be firmly established and regularly followed by the state courts. *Ford v. Georgia*, 498 U.S. 411 (1991). "[O]nly a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review by this Court of a federal constitutional claim." *Id.* at 423 (quoting *James v. Kentucky*, 466 U.S. 341, 348–351 (1984)); *see also Barr v. City of Columbia*, 378 U.S. 146, 149 (1964); *NAACP v. Alabama ex rel.*

*Flowers*, 377 U.S. 288, 297 (1964). The United States Court of Appeals for the Sixth Circuit has consistently held that Ohio's doctrine of *res judicata*, *i.e.*, the *Perry* rule, is an adequate ground for denying federal habeas relief. *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006); *Coleman v. Mitchell*, 268 F.3d 417, 427–29 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000); *Byrd v. Collins*, 209 F.3d 486, 521–22 (6th Cir. 2000); *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998).

Ohio courts have consistently refused, in reliance on the doctrine of res judicata, to review the merits of claims because they are procedurally barred. *See State v. Cole*, 2 Ohio St.3d at 112; *State v. Ishmail*, 67 Ohio St.2d at 16. Additionally, the doctrine of *res judicata* serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. With respect to the independence prong, the Court concludes that Ohio's doctrine of *res judicata* in this context does not rely on or otherwise implicate federal law. Accordingly, the Court is satisfied from its own review of relevant case law that the *Perry* rule is an adequate and independent ground for denying relief. The Court concludes, therefore, that Petitioner has waived claims three, four, and six through nine for federal habeas corpus review.

Petitioner may still secure review of his claims if he demonstrates cause for his failure to follow the state procedural rules, as well as actual prejudice from the constitutional violations that he alleges. "[P]etitioner has the burden of showing cause and prejudice to overcome a procedural default." *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001) (citing *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999) (internal citation omitted)). A petitioner's *pro se* status, ignorance of the law, or ignorance of procedural

requirements are insufficient bases to excuse a procedural default. *Bonilla v. Hurley*, 370 F.3d 498. Instead, in order to establish cause, a petitioner "must present a substantial reason that is external to himself and cannot be fairly attributed to him." *Hartman v. Bagley*, 492 F.3d 347, 358 (6th Cir. 2007). Petitioner has failed to do so here.

As cause for his procedural default, Petitioner asserts that he was denied the effective assistance of appellate counsel. As discussed, the denial of the effective assistance of appellate counsel may constitute cause for a procedural default, so long as such claim has been presented to the state courts and is not, itself, procedurally defaulted. *Edwards*, 529 U.S. at 451–52. Petitioner procedurally defaulted his claim of the denial of the effective assistance of counsel based on his attorney's failure to object to the admission of certain evidence because he did not raise any such issue in his appeal to the Ohio Supreme Court. Instead, Petitioner argued therein only that he had been denied the effective assistance of appellate counsel because appellate counsel did not file a motion to suppress evidence obtained from an allegedly illegal traffic stop. (Doc. 11-1, PageID# 242.) The denial of the effective assistance of appellate counsel therefore cannot constitute cause for the remainder of Petitioner's claims of ineffective assistance of trial counsel. *Edwards*, 529 U.S. at 451-52. The Court will address the merits of the latter claim, to determine whether Petitioner has established cause and prejudice for his procedural default.

### III. Ineffective Assistance of Counsel

"In all criminal prosecutions," the Sixth Amendment affords "the accused...the right... to Assistance of Counsel for his defence." U.S. Const. amend. VI. "Only a right

to 'effective assistance of counsel' serves the guarantee." *Couch v. Booker*, 632 F.3d 241, 245 (6th Cir. 2011) (citation omitted). The United States Supreme Court set forth the legal principals governing claims of ineffective assistance of counsel in *Strickland v. Washington,* 466 U.S. 556 (1984). *Strickland* requires a petitioner claiming ineffective assistance of counsel to demonstrate that his counsel's performance was deficient and that he suffered prejudice as a result. 466 U.S. at 687; *Hale v. Davis*, 512 Fed.Appx. 516, 520 (6th Cir. 2013). A petitioner "show[s] deficient performance by counsel by demonstrating 'that counsel's representation fell below and objective standard of reasonableness." *Poole v. MacLaren*, 547 Fed.Appx. 749, 754 (6th Cir. 2013) (quoting *Davis v. Lafler*, 658 F.3d 525, 536 (6th Cir. 2011) (internal quotation marks omitted) and citing *Strickland,* 466 U.S. at 687). To make such a showing, a petitioner "must overcome the 'strong [ ] presum[ption]' that his counsel 'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Poole*, 547 Fed.Appx. at 754 (quoting *Strickland,* 466 U.S. at 687). "To avoid the warping effects of hindsight, [courts must] 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " *Bigelow v. Haviland*, 576 F.3d 284, 287 (6th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689).

> The *Strickland* test applies to appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Burger v. Kemp*, 483 U.S. 776 (1987)....Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal. *Id.* citing *Wilson*.... The attorney need not advance every argument, regardless of merit, urged by the appellant. *Jones v. Barnes*, 463 U.S. 745, 751–752 (1983) ( "Experienced advocates since time beyond

memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." 463 U.S. 751–52).

*Leonard v. Warden, Ohio State Penitentiary*, No. 1:09-cv-056, 2013 WL 831727, at *28 (S.D. Ohio March 6, 2013). Factors to be considered in determining whether a defendant has been denied the effective assistance of appellate counsel include:

(1) Were the omitted issues "significant and obvious"?

(2) Was there arguably contrary authority on the omitted issues?

(3) Were the omitted issues clearly stronger than those presented?

(4) Were the omitted issues objected to at trial?

(5) Were the trial court's rulings subject to deference on appeal?

(6) Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?

(7) What was appellate counsel's level of experience and expertise?

(8) Did the petitioner and appellate counsel meet and go over possible issues?

(9) Is there evidence that counsel reviewed all the facts?

(10) Were the omitted issues dealt with in other assignments of error?

(11) Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes v. Coyle*, 171 F.3d 408, 427-28 (6th Cir. 1999) (citations omitted).

ord fails to reflect that Petitioner can establish the denial of the effective assistance under

the test set forth in *Strickland*. Petitioner claims that his attorney improperly failed to

file a motion to suppress firearms police obtained from the traffic stop of prosecution

witnesses Nicholas Brown and Samantha Cook. These individuals testified for the

prosecution pursuant to the terms of their negotiated plea agreements. They were

driving in a separate car from that of the Petitioner at the time that police stopped their

vehicle. Petitioner, however, contends that police acted outside of the scope of their

jurisdiction when they initiated the traffic stop. Nothing in the record supports his

allegation. Further, it appears from the record that Petitioner would have lacked

standing to obtain the suppression of evidence seized by police from the co-defendants'

vehicle.

> A defendant's standing is determined independently from his co-defendant's standing with regard to the same items and places that are searched. "[A] defendant has standing to challenge the admission of evidence only if the defendant's own constitutional rights have been violated. In cases involving Fourth Amendment violations, we determine standing by deciding whether a defendant can establish a legitimate expectation of privacy in the area searched or the items seized." *United States v. Davis*, 430 F.3d 345, 359–60 (6th Cir. 2005) (citations and internal quotation marks omitted) (noting that a co-defendant's standing has no effect on other defendants' standing); *United States v. Williams*, 354 F.3d 497, 510–11 (6th Cir. 2003).

> Thus, in *Davis*, one defendant lacked standing to challenge the search even though his co-defendant had standing; the reason for the difference was that the defendant who lacked standing "ha[d] no reasonable expectation of privacy either in Davis's vehicle or in the items seized from Davis's vehicle, because he 'had neither a property nor possessory interest'

16

in them." *Davis,* 430 F.3d at 360 (quoting *United States v. Pino,*
855 F.2d 357, 360 (6th Cir. 1988)).

*United States v. Mastromatteo,* 538 F.3d 535, 544 (6th Cir. 2008). Moreover, the record

reflects substantial evidence of guilt.

Therefore, Petitioner has failed to establish that he was denied the effective assistance of

appellate counsel. He has likewise failed to establish cause for the procedural default of

his claim of the denial of the effective assistance of trial counsel.

Petitioner states that he is actually innocent of the charges against him. He has

attached a copy of the transcript of his re-sentencing hearing and exhibits in support of

this argument. (Doc. 12-1, PageID# 335-409.) Petitioner indicated at his re-sentencing

hearing that he had written to his appellate attorney requesting that certain issues be

included in his appeal; however, he received no reply, and his attorney did not include

these issues in his appellate brief. *Transcript* (Doc. 12-1, PageID# 341-42.) He

complained that his attorney failed to object to hearsay testimony by Detective Segaard

indicating that another police officer had identified Petitioner from a phone

conversation. (PageID# 343-44.) He claimed that the Powell Police Department

illegally stopped him and arrested him outside of their jurisdiction and that his attorney

had refused to obtain a copy of the video of his traffic stop to verify this allegation.

(PageID# 344.) He argued that the photo array did not indicate that Jack Gobal had

identified him as his assailant, and did not do so at trial (PageID# 347.) Moreover,

Bethany Bunting identified him as her assailant, but Petitioner's hair did not match the

description of that given to police on the night of his arrest, and his attorney nonetheless

17

failed to file a motion to suppress or object. (PageID# 347-48.) Petitioner denied having the four firearms that police allegedly seized from his residence during execution of a search warrant. He complained that his attorney failed to file a motion to suppress prejudicial testimony regarding items purportedly taken from his home. (PageID# 350-51.) Petitioner stated that the State used an incorrect BCI report to connect him to a firearm confiscated from Samantha Cook on which his DNA was not present. (PageID# 351-52.) Again, his attorney failed to object. Likewise, counsel failed to object to a false reference to his prior conviction on drug trafficking. (PageID# 355-56.) He requested a hearing on these issues or dismissal of the charges against him. (PageID# 357.)

Petitioner attached a copy of a November 25, 2014, letter he wrote to appellate counsel requesting a copy of his record, and that certain issues be raised on direct appeal. (PageID# 372-73.) He has also attached other documents relating to his claims, including various police reports, such as a copy of the March 10, 2014, property impoundment form of the City of Powell Police Department, in reference to property seized from his home (PageID# 375-77), the trial court's *Judgment Entry of Sentence* (PageID# 378-79), an Evidence Submission Sheet from the Powell Police Department (PageID# 380-81), a letter from the Ohio Attorney General to Detective Smith (which document is somewhat undecipherable) (PageID# 380), a police report regarding the DNA analysis on the firearms (PageID# 381-82), the witness statements of Nicholas Brown and permission to search form (PageID# 383), the Delaware County Emergency Communications "Incident Run Sheet," (PageID# 384, 389), a copy of what appears to be part of the prosecution's witness subpoena list (PageID# 386-87), documents relating

to the photo array and photo identification of Petitioner (PageID# 390-91), documents relating to the withdrawal of his first appointed appellate counsel (PageID# 392-95), and a copy of Petitioner's Ohio Supreme Court appeal (PageID# 397-410).

The Supreme Court has recognized actual innocence as excusing procedural default in presenting a claim to the state courts. *Murray v. Carrier*, 477 U.S. 478 (1986). The controlling precedent on this point is now the Supreme Court's decision in *McQuiggin v. Perkins*, 569 U.S. ----, 133 S. Ct. 1924 (2013).

> [A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* and *House*, or, as in this case, expiration of the statute of limitations. We caution, however, that tenable actual-innocence gateway pleas are rare: "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U. S., at 329, 115 S. Ct. 851, 130 L.Ed. 2d 808; *see House*, 547 U.S., at 538, 126 S. Ct. 2064, 165 L.Ed. 2d. 1 (emphasizing that the *Schlup* standard is "demanding" and seldom met). And in making an assessment of the kind *Schlup* envisioned, "the timing of the [petition]" is a factor bearing on the "reliability of th[e] evidence" purporting to show actual innocence. *Schlup*, 513 U. S., at 332, 115 S. Ct. 851, 130 L.Ed. 2d. 808.
>
> * * *
>
> [A] federal habeas court, faced with an actual-innocence gateway claim, should count unjustifiable delay on a habeas petitioner's part, not as an absolute barrier to relief, but as a factor in determining whether actual innocence has been reliably shown.

*McQuiggin v. Perkins*, 133 S. Ct. at 1928.

In *Souter v. Jones*, 395 F.3d 577 (6thCir. 2005), the Sixth Circuit held Congress enacted the statute of limitations in 28 U.S.C. § 2244(d)(1) "consistent with the *Schlup* [v. *Delo*] actual innocence exception." The *Souter* court also held:

> [I]f a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup v. Delo*, 513 U.S. 298, 316 (1995)." Thus, the threshold inquiry is whether "new facts raise[ ] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id*. at 317. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id*. at 327. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 140 L.Ed. 2d 828, 118 S. Ct. 1604 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.' " *Id*. at 321.

*Souter v. Jones*, 395 F.3d 577, 590 (6th Cir. 2005).

Petitioner has failed to meet this standard here. None of the documents or other related issues he refers to in support of his claim of actual innocence constitute new evidence establishing that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt.

## IV. Recommended Disposition

Therefore, the Magistrate Judge **RECOMMENDS** that Respondent's *Motion to Dismiss* (Doc. 11) be **GRANTED**, and that this action be **DISMISSED.**

Petitioner's *Motion(s) for Assistance to Attain Transcript of Proceedings* (Docs. 7, 9) are **DENIED.**

## V.  Procedure on Objections

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. 636(B)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

/s/ Terence P. Kemp
United States Magistrate Judge